**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**WAYCROSS DIVISION**

MARK ELDON CREWS,

        Movant,

    v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 5:16-cv-68

(Case No. 5:10-cr-27)

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Approximately six years ago, this Court sentenced Mark Eldon Crews ("Crews") to fifteen years' imprisonment under the Armed Career Criminal Act ("ACCA"). Crews, who is currently incarcerated at the Federal Correctional Institution in Jesup, Georgia, has now filed a Motion to Vacate, Set Aside, or Correct his Sentence pursuant to 28 U.S.C. § 2255. (Doc. 106.)[1] Crews contends that the Court must resentence him following the United States Supreme Court's decision in Johnson v. United States, ___ U.S. at ___, 135 S. Ct. 2551, 2563 (June 26, 2015). However, Johnson only invalidated the ACCA's residual clause, and Crews has failed to demonstrate that the Court relied upon that clause in any way during his sentencing proceedings. To the contrary, the record reveals that the Court sentenced Crews as an armed career criminal due to his extensive history of burglary convictions and the ACCA's specific enumeration of burglary as a crime of violence.

---

[1] The pertinent record documents in this case are filed on the docket of Crews' criminal case, United States v. Crews, et al., 5:10-cr-27 (S.D. Ga. Dec. 8, 2010), and many are not included in Crews' civil docket. Thus, for ease of reference and consistency, the Court cites to Crews' criminal docket in this Order and Report and Recommendation.

Because Crews does not raise a valid <u>Johnson</u> claim, I **RECOMMEND** this Court **DISMISS** Crews' Motion to Vacate, Set Aside, or Correct his Sentence for lack of jurisdiction under 28 U.S.C. § 2255(h). (Doc. 106.) Alternatively, to the extent that the Court reaches the merits of Crews' arguments, it should **DENY** his Motion on the merits. Further, I **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Crews a Certificate of Appealability and *in forma pauperis* status on appeal. Additionally, for reasons that follow, the Court **DENIES** Crews' Motion to Amend. (Doc. 112.)

## BACKGROUND

### I.     The Armed Career Criminal Act

The Court typically begins its discussion of a matter by detailing the factual and procedural background of the case before it. However, the facts and history of Crews' case will be better understood by first discussing the federal statutes under which Crews was prosecuted and recent cases pertinent to those laws.

Federal law prohibits certain persons, including convicted felons, from shipping, possessing, or receiving firearms in or affecting interstate commerce. 18 U.S.C. § 922(g)(1). Ordinarily, an individual who violates this prohibition faces a statutory maximum sentence of ten years' imprisonment. 18 U.S.C. § 924(a). However, a statutory provision known as the "Armed Career Criminal Act" or "ACCA" imposes a higher mandatory minimum term of imprisonment for certain offenders. Any person who violates Section 922(g) and has on three or more occasions been convicted for a "serious drug offense" or "violent felony" will receive a mandatory minimum sentence of fifteen years' imprisonment. 18 U.S.C. § 924(e)(1). The ACCA provides, in relevant part:

the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

> (i)  has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B).[2]

The first prong of this definition, set forth in subsection (i), has come to be known as the "elements clause," while the crimes listed at the beginning of the subsection (ii), "burglary, arson, or extortion, or involves use of explosives," have come to be known as the "enumerated crimes." United States v. Owens, 672 F.3d 966, 968 (11th Cir. 2012). Finally, the last portion of subsection (ii), "or otherwise involves conduct that presents a serious potential risk of physical injury to another," is commonly referred to as the "residual clause." Id.

In the landmark case of Johnson, ___ U.S. at ___, 135 S. Ct. at 2563, the Supreme Court held that "imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process[.]" Thus, the Court struck down that portion of the ACCA. However, the Court also emphasized that its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." Id. In Welch v. United States, ___ U.S. ___, 136 S. Ct. 1257, 1264–65 (Apr. 18, 2016), the Supreme Court held that Johnson announced a new substantive rule that applies retroactively to cases on collateral review.

---

[2] "Serious drug offense" means "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law[.]" 18 U.S.C. § 924(e)(2)(A)(ii).

While the four enumerated crimes (or the "enumerated crimes clause") have not suffered the same fate as the residual clause, they have been the subject of numerous recent decisions of the Supreme Court and the Eleventh Circuit Court of Appeals. These decisions inform an analysis that is more complicated than would appear at first blush: whether an offender's prior conviction that bears the label of an enumerated crime actually constitutes a conviction for one of the enumerated offenses for purposes of the ACCA. Rather than merely relying on the label attached to an offender's prior conviction, federal courts must assess whether the defendant committed one of the enumerated crimes actually envisioned upon the passage of the ACCA. To conduct this inquiry, a sentencing court must assess the elements forming the basis of the offender's conviction and compare those elements to the "generic crime–*i.e.,* the offense as commonly understood." Descamps v. United States, 570 U.S. 254, 257 (2013).

Decisions regarding whether a burglary conviction qualifies as an ACCA predicate offense demonstrate how courts approach the enumerated crimes. Though the ACCA specifically lists "burglary" as a violent felony, merely because a state conviction is labeled a "burglary" does not automatically qualify it as a predicate offense under the ACCA. Rather, "[a]s the [ACCA] has been interpreted, a conviction for 'generic burglary' counts as a violent felony, while a conviction for 'non-generic burglary' does not." United States v. Ranier, 616 F.3d 1212, 1213 (11th Cir. 2010), *abrogated on other grounds by* United States v. Howard, 742 F.3d 1334 (11th Cir. 2014). A "generic" burglary is "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." Taylor v. United States, 495 U.S. 575, 599 (1990). A "non-generic" burglary is one that "do[es] not include all of the elements essential to

generic burglaries," including burglaries of boats, automobiles, and other non-buildings. <u>Ranier</u>, 616 F.3d at 1214.

As with all enumerated crimes, to assess whether a state conviction for burglary qualifies as a generic crime, the Court can employ two methods. First, the Court must assess the state statute under "the categorical approach." <u>Howard</u>, 742 F.3d at 1345–46. If that assessment does not end the inquiry, then the Court must determine whether the statute can be assessed under the "modified categorical approach." <u>Id.</u> Under the "categorical approach," courts "compare the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime–<i>i.e.</i>, the offense as commonly understood." <u>Descamps</u>, 570 U.S. at 257. Under this approach, "[t]he prior conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." <u>Id.</u> If the statute so qualifies, then this ends the inquiry: the conviction is a violent felony, and the modified categorical approach is not needed. <u>Howard</u>, 742 F.3d at 1345.

However, if the burglary statute is broader than the elements of the generic crime, the statute itself does not qualify as a predicate offense under the categorical approach. Thus, the court must then determine whether it can apply the "modified categorical approach" to assess whether the defendant's conviction under the statute does qualify as a predicate offense. <u>Id.</u> Courts can use the modified categorical approach in those instances "when a prior conviction is for violating a so-called divisible statute." <u>Descamps</u>, 570 U.S. at 257. A divisible statute is a statute which "sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building or an automobile. If one alternative (say, a building) matches an element in the generic offense, but the other (say, an automobile) does not,

the modified categorical approach permits sentencing courts to . . . determine which alternative formed the basis of the defendant's prior conviction." Id.

To determine which alternative of a divisible statute formed the basis for the prior conviction, a court can assess a limited class of documents including the charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge. Shephard v. United States, 544 U.S. 13, 16 (2005). These documents are commonly referred to as "Shephard documents." If a statute is divisible, the Court can use the Shephard documents to "do what the categorical approach demands: compare the elements of the crime of conviction (including the alternative element used in the case) with the elements of the generic crime." Descamps, 570 U.S. at 257. If the Shephard documents show that the defendant was found guilty under elements of a divisible statute which match elements of the generic offense instead of those which do not, the prior conviction is an ACCA predicate. Howard, 742 F.3d at 1347. In contrast, "a statute is indivisible if it contains 'a single, indivisible set of elements.'" Id. at 1346 (quoting Descamps, 570 U.S. at 258 & at 257 (defining an indivisible statute as one "'not containing alternative elements'"). "If a statute is indivisible, a court may not apply the modified categorical approach, and that is the end of the inquiry; the prior conviction cannot qualify as an ACCA predicate regardless of what any Shephard documents may show." Id.

In Howard, the Eleventh Circuit assessed whether the defendant's conviction under Alabama's third-degree burglary statute qualified as a generic burglary, and thus, a predicate violent felony under the ACCA. The Eleventh Circuit noted "[t]he elements of generic burglary under the ACCA are: (1) 'an unlawful or unprivileged entry into, or remaining in,' (2) 'a building or other structure,' (3) 'with intent to commit a crime.'" Id. at 1348 (quoting Taylor, 495 U.S. at 598). The Eleventh Circuit first determined that the Alabama statute that the

defendant in Howard was convicted under did not qualify as a generic burglary under the categorical approach because the elements of the offense were not the same as, or narrower than, those of the generic offense. Id. (citing Ranier, 616 F.3d at 1215). The Howard court then assessed whether the statute was divisible, and therefore, was able to be assessed under the modified categorical approach. The court noted that, under Descamps, the "key to determining divisibility . . . is whether the statute sets out one or more elements of the offense in the alternative—for example, stating that burglary involves entry into a building *or* an automobile." Id. (internal citation omitted) (emphasis in original). The Alabama statute contains nothing "suggest[ing] its definition of 'building' is drafted in the alternative." Id. "The items that follow each use of the word 'includes' in the statute are non-exhaustive examples of items that qualify as a 'structure' and thus count as a 'building' under . . . § 13A-7-l(2). . . . The statutory definition of 'building' does not say what is not included. In light of the Descamps decision, illustrative examples are not alternative elements." Id. (internal citations omitted). Thus, the Eleventh Circuit determined that Alabama's third-degree burglary statute, § 13A-7-7, is a non-generic and indivisible statute, and a conviction under that statute "cannot qualify as a generic burglary under the ACCA." Id. at 1349.

In Mathis v. United States, ___ U.S. ___, 136 S. Ct. 2243 (June 23, 2016), the Supreme Court further clarified how courts should employ the modified categorical approach. The Court held that the fact that a statute contains multiple alternative means of committing the crime does not make the statute divisible, if these means are not alternative elements but rather only factual determinations about an element, and thus, unnecessary to the jury's determination of guilt for the crime. Mathis, ___ U.S. at ___, 136 S. Ct. at 2251–54. Put another way, the Court held that, when using the modified categorical approach to determine whether a prior conviction is a

"violent felony" or "serious drug offense" under the ACCA, a court should focus on the "elements" of the statutory offense rather than on that offense's non-essential "means" of commission.  Id.

## II.    Crews' Conviction and Sentencing

On December 8, 2010, a grand jury in this District returned a one-count Indictment alleging that Crews was a convicted felon in possession of a firearm and an armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  (Doc. 1.)[3]  The Indictment charged that Crews had accumulated several state felony convictions before his possession of a firearm on October 30, 2010.  (Id.)  The grand jury specifically listed those prior felonies, including numerous burglary and attempted burglary convictions in Georgia and one burglary conviction in Florida.  (Id.)  The Government's Penalty Certification filed at the commencement of the case stated that Crews faced a minimum term of imprisonment of fifteen years under the ACCA. (Doc. 2.)

On June 13, 2011, Crews pleaded guilty before the Honorable Lisa Godbey Wood to the sole charge against him, possession of a firearm by a convicted felon and being an armed career criminal.  (Doc. 31.)  Before accepting Crews' guilty plea, Judge Wood explained to Crews that, because he was an armed career criminal, he faced a minimum statutory penalty of fifteen years' imprisonment.  (Doc. 48, pp. 12, 17–18 ("That is if I accept your guilty plea, I must sentence you to at least fifteen years imprisonment.").)  Crews responded that he understood the penalties involved, and he specifically understood the mandatory minimum penalty.  (Id. at pp. 12–13

---

[3] Crews' Indictment arose out of an investigation into a suspect having driven a truck through the front of a convenience store in an unsuccessful attempt to steal the store's automated teller machine ("ATM"). (Pre-Sentence Investigation Report, ("PSI"), ¶¶ 4–7.)  During the investigation, officers located Crews in a wooded area and discovered an unloaded Lorcin .25 caliber pistol in the pocket of the jacket he was wearing.  (Id.)  Though Crews was a suspect in the attempted theft of the ATM, he was not formally charged with that crime.

& 18 ("I mean, if I go to trial, I will lose. I understand that. I was found sleeping in the woods with a pistol in my pocket. So I will take the fifteen years.").) As part of the plea agreement, the Government agreed that it would not argue for a sentence above the statutory minimum of fifteen years. (Id. at pp. 20–21.)

Prior to Crews' sentencing hearing, United States Probation Officer Scot Riggs prepared a Pre-Sentence Investigation Report ("PSI"). Probation Officer Riggs laid out Crews' offense conduct and criminal history in detail and calculated Crews' statutory penalties, as well as his advisory Guideline range. The PSI set forth a lengthy list of adult criminal convictions. (PSI, ¶¶ 24–31.) Probation Officer Riggs detailed seven convictions for burglary and three convictions for attempted burglary that Crews obtained in the state courts of Georgia and Florida. (Id. at ¶¶ 27–30.) In Paragraph 20 of the PSI, when calculating Crews' offense conduct, Probation Officer Riggs stated, "As is shown in Part B (Criminal History) below, the defendant has been convicted of seven separate burglary offenses and three separate attempted burglary offenses (see paragraphs 27 through 30). Since the instant offense is a conviction for 18 U.S.C. §§ 922(g)(1) and 924(e), the defendant is an armed career criminal within the meaning of U.S.S.G. § 4B1.4." (Id. at ¶ 20.) The Probation Officer concluded that Crews' Guideline range was 180 to 210 months' imprisonment. (Id. at ¶ 53.)

Crews' counsel filed objections to a number of the Probation Officer's conclusions, including the conclusion in Paragraph 20 that Crews must be sentenced under the ACCA due to his burglary convictions. (Addendum to PSI, pp. 3–4.) Crews' counsel questioned whether four of the prior convictions should be considered as separate offenses. He pointed out that all of the burglaries were commercial, not residential, and that Crews was prepared to show that the offenses fell outside of the "'generic' definition." (Id.)

Probation Officer Riggs responded at length to Crews' objections. Specifically, the Probation Officer stated:

> The defendant is subject to an enhanced sentence as an armed career criminal because he stands convicted of a violation of 18 U.S.C. § 922(g) (possession of a firearm by a convicted felon) and he has at least three prior convictions for a "violent felony" or "serious drug offense," or both, committed on occasions different from one another. 18 U.S.C. § 924(e)(1) and U.S.S.G. § 4Bl.4. Application Note 1 to § 4B 1.4 states that the terms "violent felony" and "serious drug offense" are defined in 18 U.S.C. § 924(e)(2). **The offense of "burglary" is specifically enumerated as a "violent felony" for the purposes of sentencing as an armed career criminal**.

(Id. at p. 4 (emphasis supplied).) The Probation Officer also explained why Crews' seven separate burglary offenses and three separate attempted burglary offenses over a period of approximately five months qualified as "violent felonies" under the ACCA. Probation Officer Riggs reiterated, "As previously noted, **the offense of burglary is specifically enumerated as a 'violent felony' for the purposes of the ACCA**." (Id. at p. 5 (emphasis supplied).) Probation Officer Riggs then detailed why Crews' prior convictions met "the elements of generic burglary—unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." (Id. (citing Taylor, 495 U.S. at 599).) The Probation Officer asserted:

> The burglary statute at issue in each of the defendant's six prior Georgia convictions (O.C.G.A. § 16-7-1) includes elements which fall outside the scope of generic burglary (e.g., unlawfully entering locations other than buildings or structures, such as vehicles, aircrafts, watercrafts, etc.). Therefore, the Court is authorized to review the charging documents and certain other court documents to determine if a conviction under a "non-generic" burglary statute still qualifies as "burglary" under the ACCA. See Shepard v. United States, 544 U.S. 13, 26 (2005). See also United States v. Ranier, 616 F.3d 1212, 1215(11th Cir. 2010) ("A conviction under a non-generic burglary statute still counts as 'burglary' under the ACCA if the defendant was actually found guilty of the elements of a generic burglary."). . . . At least with respect to each of the defendant's six prior Georgia burglary convictions (paragraphs 27, 28, and 29), **a review of the charging documents reveals that each of those offenses meet the elements of generic burglary (i.e., Crews unlawfully entered a building or structure with**

**the intent to commit a theft**).  Therefore, the probation officer maintains that the defendant is an armed career criminal because he stands convicted of a violation of 18 U.S.C. § 922(g) and he has at least three prior convictions for violent felony offenses.

(Addendum to PSI, p. 5 (emphasis supplied).)

On the eve of the sentencing hearing, Crews' counsel submitted a sentencing memorandum on Crews' behalf.  (Doc. 40.)  In the sentencing memorandum, counsel argued that sentencing Crews as an armed career criminal under the ACCA, as well as under United States Sentencing Guideline Section 4B1.4, would violate the Equal Protection and Due Process Clauses of the Fourteenth Amendment and the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.  (Id.)

Crews appeared before Judge Wood for a sentencing hearing on February 8, 2012.  (Doc. 49.)  At that hearing, Judge Wood heard from Crews' counsel, counsel for the Government, and the United States Probation Officer in detail regarding Crews' objections to the PSI.  (Id. at pp. 3–28.)  This colloquy included discussion amongst Judge Wood, counsel, and the Probation Officer regarding Crews' objections to the Probation Officer's recommendation that Crews be designated as an armed career criminal.  (Id. at pp. 14–26.)

Crews' counsel began the discussion by stating that he understood that, under Taylor, Crews' numerous convictions for burglary of commercial buildings qualified as generic burglaries under the ACCA.  (Id. at pp. 14–15.)  However, counsel reiterated his arguments from his sentencing memorandum that the ACCA's application to Crews' burglaries of commercial buildings violated the Due Process, Equal Protection, and Cruel and Unusual Punishment Clauses.  (Id. at pp. 15–19.)

In response, counsel for the Government cited at length from the Supreme Court's holding in Taylor.  (Id. at pp. 20–21.)  Counsel explained that, under Taylor, a person commits a

"burglary" for purposes of Section 924(e) if "he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." (Id. at p. 21.) The Government's counsel then stated that Crews' burglary and attempted burglary convictions of commercial buildings fall squarely within the Supreme Court's definition of burglary. (Id. at pp. 21–22.)

Judge Wood then discussed Crews' burglary convictions with Probation Officer Riggs. Judge Wood stated that the Court "understand[s] that there are ten to choose from when we are talking about burglary in Mr. Crews' case. There are seven actual burglary convictions and three attempted burglary convictions." (Id. at p. 23.) After Probation Officer Riggs confirmed that understanding, Judge Wood asked Probation Officer Riggs, "In looking at the Shephard documents, walk me through which ones qualify under Georgia's non-generic burglary statute as predicate offenses for armed career criminal purposes." (Id.) In a case-by-case colloquy with Judge Wood, Officer Riggs then confirmed that the Shepard documents established that Crews entered buildings without authority and with intent to commit a crime on ten different occasions and that he damaged the roofs of several buildings during six of his burglaries and attempts. (Id. at pp. 23–25.) Judge Wood then asked Crews' counsel if he disputed any of these instances of burglary, and counsel stated that he did not and that "as to what the indictments say as to what Mr. Crews pled guilty to, I have reviewed them, and I do not dispute those facts as alleged, Your Honor, at least as to the entry of a structure, Judge." (Id. at pp. 25–26.)

Judge Wood then overruled Crews' objection to Paragraph 20 of the PSI and found "that the credible evidence shows that the armed career criminal designation is appropriate and the enhancement is correctly applied in Mr. Crews' case." (Id. at p. 26.) She further concluded that she did "not find it tempting" to find that the ACCA is unconstitutional as applied to Crews.

(Id.) Judge Wood adopted the findings of facts and conclusions of the PSI and overruled Crews' objections. (Id. at p. 28.) She specifically overruled Crews' questions of Guideline applications with respect to Paragraphs 15, 20, 24, 25, and 35 and held that she "**concur[red] with the findings in the PSI and its addendum**." (Id. (emphasis supplied).) Thus, Judge Wood determined Crews' Guideline range was 180 to 210 months' imprisonment. (Id.) She further concluded Crews faced a statutory minimum penalty of 15 years and a maximum of life. (Id.)

Prior to pronouncing a sentence, Judge Wood gave Crews the opportunity to address the Court. Crews stated, "[I]n my PSI where it states I did the four burglaries on the storages and cut the holes in them and three attempts, I did that within a two-month period of time, and I went and done [sic] my time, and I come [sic] home." (Id. at p. 29.) Crews then discussed his other burglary convictions and, though unclear, appeared to diminish the wrongfulness as to some of those convictions while denying full culpability for others. (Id. at pp. 29–30.) However, he never challenged that he had received the burglary convictions or any of the Probation Officer's conclusions regarding the convictions.

Judge Wood then pronounced a sentence of 180 months. In her articulation of how she arrived at that sentence, Judge Wood stated, "It would be difficult to have a more abysmal record of **burglaries** than you do. As such, the armed career criminal designation fits." (Id. at p. 34 (emphasis supplied).)

### III.    Crews' Direct Appeal

Crews filed a direct appeal to the Court of Appeals for the Eleventh Circuit and argued that: the ACCA was unconstitutional under the Fifth, Sixth, and Eighth Amendments; the district court erred in applying a four-level increase to Crews' offense level for use or possession of a firearm in connection with another felony offense; and his sentence was substantively

unreasonable.  Appellant Br., <u>Crews v. United States</u>, Case No. 12-11022 (11th Cir. May 30, 2012).  Crews argued in his appellate brief, among other things, that classifying his convictions under Georgia's "non-generic" burglary statute as violent offenses violated the Constitution because other defendants convicted under the same statute would not be so classified.  <u>Id.</u> at pp. 17–18 (citing, *inter alia*, <u>Taylor</u>, 495 U.S. at 592; <u>Ranier</u>, 616 F.3d at 1215; O.C.G.A. § 16-7-1(a)).

The Eleventh Circuit rejected Crews' arguments and affirmed his sentence.  (Doc. 56.)  The Court explained, "Crews qualified as an armed career criminal under the ACCA due to his prior convictions for burglarizing or attempting to burglarize various businesses and his 180-month sentence was the minimum sentence required by the ACCA."  (<u>Id.</u> at pp. 2–3.)  The Eleventh Circuit also rejected Crews' argument that the "distinction between generic (i.e., structure) and non-generic (i.e., non-structure) burglaries bears no rational relationship to a legitimate government purpose."  (<u>Id.</u> at pp. 3–4.)  In doing so, the Court explained what convictions are treated as burglaries in relation to the ACCA's enumeration of burglary as a violent felony.  (<u>Id.</u> at 4 (citing <u>Taylor</u>, 495 U.S. at 599; <u>Ranier</u>, 616 F.3d at 1213).)

## IV.    Crews' First Section 2255 Motion

On January 30, 2014, Crews filed his first Section 2255 motion seeking to vacate his sentence.  (Doc. 60.)  Crews filed this motion *pro se* and argued, among other things, that "[t]he prior offenses of burglary used to enhance the Petitioner under ACCA do not contain the required elements of **generic burglary**[;] furthermore the prior offense statue(s) [sic] are overbroad and include both generic and non-generic burglary elements."  (<u>Id.</u> at p. 3 (emphasis supplied).)  Crews emphasized the "burglary" portion of the ACCA's enumerated clause.  (<u>Id.</u> at p. 2).  Further, he discussed "the rule for determining when a defendant's prior conviction counts

as one of ACCA's **enumerated predicate offenses (e.g., burglary)**." (Id. at p. 3 (emphasis supplied).)

The Honorable James E. Graham reviewed each of Crews' Section 2255 claims in depth and recommended that the Court deny Crews' motion. (Doc. 65.) Judge Graham explained how the Court must assess whether Crews' prior burglary convictions qualify as "burglary" under the enumerated crimes clause of the ACCA. (Id. at pp. 4–6 (citing Descamps, 570 U.S. at 254).) Judge Graham explained the "categorical approach" and the "modified categorical approach" that the Court must use to answer that question. He then applied the modified categorical approach to Crews' prior convictions and found that Crews was convicted for generic burglaries which are qualifying violent felonies under the ACCA. (Id. at pp. 6–7.)

In his traverse and his objections to the Report and Recommendation, Crews argued that, under the then-recent decision in Howard, his convictions for burglarizing commercial structures under Georgia's statute no longer qualified as "burglaries" under the ACCA. (Docs. 67, 68.) In light of this argument, the Court ordered the Government to address the effect of Howard on Crews' case. (Doc. 71.) On August 19, 2014, the Government responded and explained that, unlike the statute involved in Howard, the state burglary statutes underlying Crews' convictions were divisible, and therefore, the Court could use the "modified categorical approach" to determine that his convictions were "generic burglaries." (Doc. 73.) Applying the modified categorical approach, the Government contended that Crews' convictions were "burglaries" under the ACCA. (Id.) Crews responded in opposition to that brief, arguing that the burglary statutes under which he was convicted were not divisible under Howard, and therefore, it could not be said that his convictions were for "generic burglaries." (Doc. 83.)

On March 2, 2015, Judge Wood issued an Order adopting the Report and Recommendation and denied Crews' Section 2255 motion. (Doc. 84.) Judge Wood explained:

> Crews' Petition presents an issue more complicated than would appear at first blush: whether each of his state law convictions for burglary constitute[s] a burglary in relation to the federal Armed Career Criminal Act. As Crews points out throughout his pleadings, this inquiry is informed by recent decisions of the United States Supreme Court and the Eleventh Circuit. However, these precedents only support the finding that Crews' state law convictions were properly treated as violent felonies warranting the sentencing enhancement he received.

(Id. at p. 4.) When laying out the text of the ACCA, Judge Wood emphasized "burglary" as a specifically enumerated violent felony. (Id. at p. 5.) She explained at length when a conviction for burglary can qualify as violent felony under this specifically enumerated provision. (Id. at pp. 5–10.) This explanation included a discussion of Descamps, Howard, Taylor, and Shephard. (Id.) Judge Wood then analyzed in detail the statutory language and the Shephard documents regarding Crews' state burglary convictions. (Id. at pp. 11–16.) Ultimately, Judge Wood concluded, "Each of Crews' convictions for burglary under Georgia and Florida law **constitute[s] a burglary** in relation to the federal Armed Career Criminal Act." (Id. at p. 16 (emphasis supplied).) Therefore, the Court denied Crews' Section 2255 motion.

## V. Crews' Second Section 2255 Motion

On August 10, 2015, Crews filed his second Section 2255 motion seeking to set aside his sentence. (Doc. 96.) In that motion, Crews argued that he must be resentenced due to the then-recent decision in Johnson. Crews argued, for the first time, that he had been sentenced as an armed career criminal under the ACCA's residual clause. (Doc. 96.) The Government moved to dismiss Crews' motion because he failed to first obtain permission from the Eleventh Circuit Court of Appeals to file a second or successive Section 2255 motion, as required by 28 U.S.C.

§§ 2244(b)(3)(A) and 2255(h).  (Doc. 98.)  After Crews failed to respond to the Government's motion to dismiss, the Court dismissed his Section 2255 motion.  (Doc. 102.)

## VI.    Crews' Section 2255(h) Application

On June 13, 2016, Crews filed an application with the Eleventh Circuit seeking that Court's permission to file a successive Section 2255 motion raising his Johnson arguments. Appl., In re: Mark Crews, Case No. 16-13565 (11th Cir. June 13, 2016).  Crews claimed that, under the new rule of constitutional law established in Johnson, his prior convictions for burglary could no longer be used as predicate offenses.  Id. at p. 5.

On July 13, 2016, a divided panel of the Eleventh Circuit granted Crews' application. (Doc. 105.)  The Eleventh Circuit explained that it could only grant Crews' leave to file a successive motion if his claim involved newly discovered evidence of a certain nature or "a new rule of constitutional law, made retroactive to cases on collateral review, that was previously unavailable."  (Id. at p. 2 (citing 28 U.S.C. § 2255(h).)  The Eleventh Circuit stated that Crews pursued the second of these options and that he "wishes to raise one claim in a second or successive § 2255 motion. . . . Specifically, he asserts that the prior convictions used to enhance his sentence under the Armed Career Criminal Act ("ACCA")—three convictions for burglary under Georgia law—cannot be classified as 'violent felonies' in light of Johnson and therefore cannot be used as predicates for the enhancement."  (Id. at p. 3.)  That Court emphasized that its analysis was only a "threshold determination", and that it "may only deny the application if it is clear the motion will not contain a Johnson claim."  (Id. at p. 4 (citing In re Rogers, No. 16-12626, ___ F.3d ___, 2016 WL 3362057, at *1 (11th Cir. June 17, 2016.).)  The Eleventh Circuit concluded that "the sentencing court never expressly made a finding that the convictions qualified under the enumerated crimes clause.  Thus, although the record *suggests* that the

sentencing court based Crews' ACCA enhancement on the enumerated crimes clause, rather than the residual clause, it does not 'make[] undeniably clear that' this was so." (Id. at p. 5 (quoting Rogers, 2016 WL 3362057, at *2) (italics and alteration in original).)

The Honorable Julie Carnes disagreed with this conclusion and dissented from the granting of the application. (Id. at pp. 6–10.) Judge Carnes explained, "Although it is true that the district court never uttered the two words, 'enumerated crimes,' I respectfully submit that any fair reading of the record makes it clear that the enumerated crimes clause was the only ACCA clause being discussed or considered by the court and the parties at sentencing." (Id. at p. 6.) Judge Carnes summarized the PSI and the discussion at sentencing between the Court and counsel and opined that this is "the kind of conversation you have when you are discussing the validity of a particular burglary conviction under the enumerated crimes clause." (Id. at p. 7.) Thus, Judge Carnes stated "there was no reason for the court" to announce that "it had been applying the enumerated crimes analysis in determining the qualification of the burglaries for ACCA status." (Id.)

Given the majority's conclusion, Judge Carnes "remind[ed] the district court that, before proceeding to any merits inquiry when Crews presents his motion, the district court too has a gatekeeper role to perform." (Id. at p. 8.) Judge Carnes explained that the Eleventh Circuit's threshold determination that Crews has made a *prima facie* showing "does not conclusively resolve that § 2255(h) requirement issue." (Id.) She clarified that this Court must look at this issue afresh without any deference to the Eleventh Circuit's determination." (Id. at p. 9.) Judge Carnes concluded:

> All of this is a long way of saying that the district court, as part of its threshold determination, will have an opportunity to indicate whether, in enhancing Crews's sentence, it used the enumerated crimes clause or the residual clause. Only if the court first determines that the new rule in Johnson is implicated in Crews's claim

should it "proceed to consider the merits of the motion, along with any defenses and arguments the respondent may raise."

(Id. (citing In re Moss, 703 F.3d 1301, 1303 (11th Cir. 2013)).)

## VII.  Crews' Current Section 2255 Motion

Having received preliminary approval from the Eleventh Circuit, Crews filed his instant Section 2255 Motion on September 6, 2016.  (Doc. 106.)  Therein, he claims that he is "actually innocent of his title 18 U.S.C. § 924(e) conviction, due to new rule of law decided in Johnson." (Id. at p. 4.)  He requests that the Court vacate his ACCA conviction and resentence him.  (Id. at p. 12.)  He argues that "the district court never expressly made a finding that petitioner['s] prior convictions qualified under the enumerated crimes clause, or the residual clause of Title 18 U.S.C. § 924(e)."  (Doc. 106-1, p. 4.)

The Government responded to Crews' Motion and argues that he is not entitled to relief under Johnson because the Court relied upon the enumerated crimes clause, not the residual clause, when sentencing Crews.  (Doc. 110.)  The Government argues that "there is not even a smidgen of suggestion anywhere in the record of Crews's sentencing, his direct appeal, or his first § 2255 motion that his prior convictions for burglary were considered ACCA 'violent felonies' under the 'residual clause' portion of that definition now invalidated by Johnson."  (Id. at p. 9.)  Thus, the Government contends Crews does not meet the requirements of Section 2255(h) to proceed with a second or successive motion.  In response, Crews argues that Judge Wood referred to his burglary convictions as "non-generic burglaries" at the sentencing hearing, and therefore, she must have relied upon the residual clause.  (Doc. 111.)  Thus, he maintains Johnson requires that he be resentenced.

On June 16, 2017, Crews filed a Motion to Amend his Section 2255 Motion.  (Doc. 112.) Therein, Crews seeks to assert additional arguments against his ACCA designation based on the

Supreme Court's decision in <u>Mathis</u>. The Government opposes Crews' efforts to add these claims for numerous reasons. (Doc. 113.) Crews argues, on the one hand, that he is not attempting to assert an independent <u>Mathis</u> claim, and on the other, that his <u>Mathis</u> claim relates back to his original Section 2255 Motion. (Doc. 114.)

## DISCUSSION

### I.     Whether Crews can Amend his Section 2255 Motion to Add a <u>Mathis</u> Claim

Despite Crews' contradictory representations, it does appear that he is attempting to add a claim to his Section 2255 Motion based on <u>Mathis</u>. The Court rejects this effort for numerous reasons. As the Government explains, Crews has not sought permission from the Eleventh Circuit to include this claim in a successive motion under Section 2255(h). Nevertheless, some courts have held that a movant can amend an authorized Section 2255 motion to bring additional claims in the district court beyond the claim that generated the authorization in the circuit court. <u>See</u> <u>United States v. McDonald</u>, 641 F.3d 596, 615–16 (4th Cir. 2011). However, even those courts which allow such an amendment require that the amendment satisfy Federal Rule of Civil Procedure 15(a) and Section 2255(h). <u>See,e.g.</u> <u>Id.</u>; <u>United States v. Rogers</u>, No. CR WMN-09-467, 2017 WL 1497833, at *2 (D. Md. Apr. 24, 2017).[4] Crews' Motion to Amend satisfies neither.

As an initial matter, any motion to amend must be timely filed. <u>Id.</u> (denying motion to amend/supplement because motion was not timely filed under Rule 15(a)). Under Rule 15, a party may amend once as a matter of course up until 21 days after a required response to a pleading. Fed. R. Civ. P. 15(a)(1). Here, while Crews waited long after the filing of initial

---

[4] Rule 15 is applicable to Section 2255 motions via 28 U.S.C. § 2242, Federal Rule of Civil Procedure 81(a)(4), and Rule 12 of the Rules Governing Section 2255 Proceedings for the United States District Courts.

pleadings and approximately a year after Mathis was decided to file his Motion to Amend, he provides no credible reason for waiting so long to move to amend his claims.

Moreover, because Crews failed to bring this "non-Johnson" claim until more than a year after his conviction, he fails to meet the one-year statute of limitations of 28 U.S.C. § 2255(f). Unlike Johnson, Mathis does not qualify a movant for any delayed triggering of the limitations period, as it does not recognize a new right made retroactive to cases on collateral review. See Beeman v. United States, 871 F.3d 1215, 1220 (11th Cir. 2017) (affirming district court dismissal of Descamps claim as untimely under Section 2255(f), because though defendant's Johnson claim was timely, Descamps did not set out a newly recognized right; thus, defendant could not bring a Descamps claim more than one year after conviction was final). Crews argues that his Mathis claims somehow "relate back" to his original Section 2255 Motion. (Doc. 114, p. 1.) This argument is unavailing, as the Court entered judgment on Crews' original Section 2255 motion years before he sought to add additional claims in his Motion to Amend. United States v. Hames, 431 F. App'x 846, 847 (11th Cir. 2011) ("[A] motion under § 2255 can only be amended under Rule 15 before judgment is issued; Rule 15 has no post-judgment application.") (citing Jacobs v. Tempur-Pedic Int'l, Inc., 626 F.3d 1327, 1344–45 (11th Cir. 2010)).

Furthermore, Crews' supplemental Mathis claim does not satisfy Section 2255(h), as his claim does not arise from:

    (1)    newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

    (2)    a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). The Eleventh Circuit has held that <u>Mathis</u> does not provide an independent basis for a successive Section 2255 motion, as the case did not announce a new rule of constitutional law. <u>In re Hernandez</u>, 857 F.3d 1162, 1164 (11th Cir. 2017). "Rather, the Supreme Court in <u>Mathis</u> provided guidance to courts in interpreting an existing criminal statute." <u>Id.</u>; <u>see also</u> <u>Ziglar v. United States</u>, 201 F. Supp. 3d 1315, 1317 (M.D. Ala. 2016) (ruling that court does not have jurisdiction to hear defendant's claim based on <u>Descamps</u> after Eleventh Circuit granted right to bring successive Section 2255 motion based on <u>Johnson</u> "because <u>Descamps</u> is not a new rule of constitutional law within the meaning of § 2255(h)(2)."). As a result, Crews cannot use <u>Johnson</u> to raise a <u>Mathis</u> claim in his successive Section 2255 Motion. Further, as explained below, Crews does not have a cognizable <u>Johnson</u> claim. Thus, even if a movant could attach a <u>Mathis</u> claim to a valid <u>Johnson</u> claim, Crews has no valid <u>Johnson</u> claim to open the Section 2255(h) door for his <u>Mathis</u> arguments.

Moreover, to the extent Crews offers his <u>Mathis</u> claims to illuminate his <u>Johnson</u> arguments, the Court must also rebuff that argument. In <u>Beeman</u>, the Eleventh Circuit explained that the relevant question in a <u>Johnson</u> Section 2255 motion is one of "historical fact: was [the defendant] sentenced solely per the residual clause?". 871 F.3d at 1224 n.5. The <u>Beeman</u> court found that a "sentencing court's decision today that [the crime] no longer qualified under present law as a violent felony . . . would be a decision that casts very little light, if any, on the key question of historical fact[.]" <u>Id.</u>

Lastly, even if Crews' <u>Mathis</u> claims were not time-barred and not barred by Section 2255(h), the Court must deny his amendment as futile. After <u>Mathis</u>, the Eleventh Circuit has rejected an argument essentially identical to the one that Crews attempts to make in his Motion to Amend. <u>United States v. Gundy</u>, 842 F.3d 1156, 1166–69 (11th Cir. 2016). In <u>Gundy</u>, the

offender had been designated as an armed career criminal due to his prior burglary convictions under the same Georgia burglary statute underlying Crews' Georgia burglary convictions. Id. Applying Mathis, the Eleventh Circuit determined that, though the statute was "non-generic,"— i.e., broader than generic burglary, it was divisible. Id. The Court reasoned "the plain text of the Georgia statute has three subsets of different locational elements, stated in the alternative and in the disjunctive . . . effectively creating several different crimes." Id. at 1167. "That the Georgia prosecutor must select and identify the locational element of the place burgled—whether the place burgled was a dwelling, building, railroad car, vehicle, or watercraft—is the hallmark of a divisible statute." Id. Therefore, courts may continue to do just as the Court did in Gundy: apply the modified categorical approach to determine whether a defendant's prior burglary convictions match the generic definition of burglary, and thus, qualify as predicate offenses under the ACCA. Id. at 1168–69. This binding precedent forecloses Crews' argument that his prior burglary convictions under Georgia's "non-generic" burglary statute can no longer be considered "burglaries" under the ACCA.

For all of these reasons, the Court **DENIES** Crews' Motion to Amend his Section 2255 Motion to add a Mathis claim.

## II. Whether Crews Can Proceed Under Section 2255(h)

Though the Eleventh Circuit has made a preliminary determination that Crews raises a *prima facie* Johnson claim and can proceed under Section 2255(h), this Court must revisit that issue. The Eleventh Circuit's Section 2255(h) certification is only a "threshold determination" and "does not conclusively resolve" whether Crews' Section 2255 Motion actually satisfies the requirements of § 2255(h)(2). In re Moore, 830 F.3d 1268, 1270–71 (11th Cir. 2016). Thus, even though the Eleventh Circuit granted Crews' application, this Court still must play a

gatekeeping role and "'decide every aspect of the case 'fresh, or in the legal vernacular, *de novo*.'" In re Chance, 831 F.3d 1335, 1338 (11th Cir. 2016) (quoting Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1358 (11th Cir. 2007)). This Court "not only can, but must, determine for itself" whether Crews' Motion meets the requirements of Section 2255(h)(2). In re Moore, 830 F.3d at 1271 (citing Jordan, 485 F.3d at 1357); see also In re Bradford, 830 F.3d 1273, 1275–76 (11th Cir. 2016) (explaining that, "in the context of applications to file successive § 2255 motions, we have adopted Jordan . . ."). After this *de novo* review, the "district court shall dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." 28 U.S.C. § 2244(b)(4).[5] This Court, unlike the Eleventh Circuit, is in the best position to make that decision, because it "has the benefit of submissions from both sides, has access to the record, has an opportunity to inquire into the evidence, and usually has time to make and explain a decision about whether the petitioner's claim truly does meet the [§ 2255(h)] requirements." Jordan, 485 F.3d at 1358.[6]

Crews attempts to overcome Section 2255(h)'s successiveness bar by contending that his Motion contains "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court." Unquestionably, Johnson is such a rule. However, Johnson only

---

[5] Section 2244(b)(4) is cross-referenced in Section 2255(h).

[6] There was some uncertainty as to whether a defendant bears the burden of proof during this "gatekeeping" determination. Compare In re Chance, 831 F.3d at 1339 (after granting application to file successive motion, stating, in *dicta*, that defendant does not have burden to prove that he was sentenced under the residual clause), and In re Moore, 830 F.3d at 1271–73 (after granting application to file successive motion, stating, in *dicta*, that district court cannot grant relief in a Section 2255 proceeding unless the movant proves that he was sentenced using the residual clause). However, in the context of the merits of a Section 2255 Motion, the Eleventh Circuit recently held that "[t]o prove a Johnson claim, a movant must establish that his sentence enhancement 'turn[ed] on the validity of the residual clause.' In other words, he must show that the clause actually adversely affected the sentence he received." Beeman, 871 F.3d at 1221 (citing In re Thomas, 823 F.3d 1345, 1349 (11th Cir. 2016)). In this case, regardless of where the burden rests, the record clearly establishes that the residual clause played no part in Crews' sentencing, and the Court sentenced him under the ACCA's specific enumeration of "burglary."

pertains to the residual clause of the ACCA and left the other clauses of the Act, including the enumerated crimes clause, intact. Thus, to truly contain a <u>Johnson</u> question, Crews' sentence has to have been implemented, at least in part, under the residual clause. The record in this case unequivocally establishes that Crews was deemed an armed career criminal under the ACCA's enumeration of "burglary" as a crime of violence and his prior burglary convictions. Because the residual clause played no role in his sentence, he cannot rely on <u>Johnson</u> to satisfy Section 2255(h).

When detailing why Crews had a sufficient amount of "violent felonies" to qualify as an armed career criminal, the United States Probation Officer specifically cited to and quoted the ACCA's enumeration of burglary as a crime of violence. In the Addendum to the PSI, the Probation Officer referenced Crews' burglary convictions and twice stated "the offense of **'burglary' is specifically enumerated** as a 'violent felony' for the purposes of sentencing as an armed career criminal." (Addendum to PSI, pp. 4, 5 (emphasis supplied).) At the sentencing hearing, Judge Wood expressly concurred with and adopted the findings and conclusions in the PSI and the Addendum, including this language. (Doc. 49, p. 28.) Therefore, in determining and pronouncing Crews' sentence, Judge Wood explicitly relied upon the enumeration of burglary in the ACCA.[7]

Even if there were not this direct evidence, there is more than sufficient circumstantial evidence to demonstrate that Crews' ACCA designation was based on the Act's enumeration of

---

[7] This situation exemplifies the Eleventh Circuit's observation that a district court is often in a better position than a court of appeal to assess whether a defendant's motion satisfies Section 2255(h). <u>See</u> <u>Jordan</u>, 485 F.3d at 1358. The Eleventh Circuit did not reference the Probation Officer's Addendum to the PSI in its threshold determination. In its Response, the Government cited the Probation Officer's specific reference to the enumerated crimes clause and Judge Wood's express adoption of the same. (Doc. 110, pp. 3–4.) Though Crews replied to the Government's Response and has filed several pleadings, he entirely failed to address this point.

"burglary" and not on the residual clause. The record prior to Crews' sentencing hearing, the sentencing hearing itself, and the proceedings following his sentencing hearing establish that this Court did not rely upon the residual clause. See Oxner v. United States, No. 16-17036, 2017 WL 6603584, at *2–3 (11th Cir. Dec. 27, 2017) (affirming district court's finding, based on circumstantial evidence, that the sentencing court relied on the enumerated crimes provision to enhance defendant's sentence).

Leading up to Crews' sentencing hearing, Probation Officer Riggs discussed the Shepard documents surrounding Crews' burglary convictions in the PSI and deemed him a career offender based on those convictions. (PSI, ¶¶ 20, 27–30.) Crews' counsel objected to Crews' designation as an armed career criminal without any reference to the residual clause whatsoever. (Addendum to PSI, pp. 3–4.) Rather, counsel questioned, among other things, whether Crews' burglary convictions fell outside of the "generic definition" of a burglary. (Id.) Debating whether a conviction meets the generic definition of "burglary" is a shorthand way of questioning whether a conviction qualifies as a burglary, as that crime is specifically enumerated in the ACCA. See Taylor, supra. Moreover, whether a burglary conviction meets the generic definition of burglary has no bearing on whether the conviction satisfies the residual clause.[8] Thus, in focusing on the generic definition of burglary, Crews' counsel recognized that Crews'

---

[8] The fact that the Court and the parties were not conducting a residual clause analysis when they discussed whether Crews' convictions met the "generic definition" is elucidated by the many pre-Johnson decisions where courts found a conviction did not satisfy the enumerated crimes clause but did satisfy the residual clause. See, e.g., United States v. Mayer, 560 F.3d 948, 960–63 (9th Cir. 2009) (holding that defendant's conviction under Oregon's burglary statute fell within the residual clause, even though it did not include all of a generic burglary's elements). Courts could fall back on the residual clause when the conviction did not meet the generic elements of burglary, because the "generic burglary" analysis was separate and apart from the residual clause analysis. In Crews' case, because his burglary convictions met the definition of generic burglary, the sentencing court did not have to proceed to any residual clause reliance.

ACCA status hinged on application of the enumerated crimes clause and not on the residual clause.

In response to this objection, the Probation Officer cited the fact that burglary was an enumerated crime under the ACCA and then employed the modified categorical approach to determine that Crews' convictions met "the elements of generic-burglary or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." (Id. at p. 5 (citing Taylor, 495 U.S. at 599).) The Probation Officer cited Taylor, the seminal case at that time on how courts should analyze whether a burglary satisfied the enumerated crimes clause. (Id.) Probation Officer Riggs explained in the Addendum that, though Georgia's burglary statute was "non-generic," Crews' convictions were "generic." (Id.) The Probation Officer affirmed that the Shepard documents established that Crews' burglary convictions met the elements of generic burglary. (Id.) Nowhere in the PSI or the Addendum did the Probation Officer make any mention of the residual clause. In citing to the ACCA's enumeration of burglary and conducting a generic burglary analysis that is only pertinent to the enumerated crimes clause and irrelevant to the residual clause, the Probation Officer clearly relied upon the enumerated crimes clause when calculating Crews' violent felonies under the ACCA. The Court expressly concurred with and adopted these findings and conclusions at the sentencing hearing. (Doc. 49, p. 28.)

The sentencing hearing transcript further reveals that the Court and the parties were relying upon the enumeration of burglary and not the residual clause in assessing Crews' ACCA status. Crews' counsel stated that he understood that, under Taylor, Crews' numerous convictions for burglary of commercial buildings qualified as "generic burglaries" under the ACCA. (Id. at pp. 14–15.) The Government's counsel, also relying upon Taylor, argued that

Crews' convictions fell squarely within the ACCA's definition of burglary, as the convictions had the basic elements of generic burglary: unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime. (Id. at pp. 21–22.) In fact, the Government's counsel quoted Taylor's interpretation of the ACCA's enumeration of burglary. (Id.at p. 20 ("'We believe that Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most states . . . .'" (quoting Taylor).) At no point did counsel for the Government or Crews refer to the residual clause in any way, quote the residual clause, or even paraphrase the language of the residual clause.

Judge Wood's statements at the sentencing hearing further establish that the Court conducted an enumerated crimes analysis. Judge Wood confirmed with Probation Officer Riggs that, though Georgia's burglary statute was "non-generic," Crews convictions contained the elements of generic burglary. (Id. at pp. 23–25.) Judge Wood asked—and Riggs confirmed— that the Shepard documents demonstrated Crews was repeatedly convicted of an unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime. (Id.) Judge Wood then confirmed the same with Crews' counsel, and counsel acknowledged that a review of the indictments from Crews' state cases showed that Crews was convicted of entering a structure. (Id. at pp. 25–26.) During Crews' statement, he admitted to Judge Wood that he had been convicted of at least four burglaries. (Id. at pp. 29–30.) Judge Wood referenced his "abysmal record of burglaries" when finding that the armed career criminal designation fit Crews. (Id. at p. 34.) Judge Wood's inquiry into whether Crews' convictions satisfied the generic elements of burglary could only be pertinent to the enumerated crimes clause and would have no relation to the residual clause. Put another way, by confirming that Crews' convictions satisfied the elements of generic burglary through the modified categorical approach, Judge

Wood confirmed that Crews had been convicted of at least three burglaries, as that crime is enumerated under the ACCA.[9]

It is abundantly clear that the parties and the Court focused on whether Crews' prior convictions constituted a "burglary" under the ACCA and not on whether his convictions "otherwise involve conduct that presents a serious potential risk of physical injury to another." At no time during the sentencing hearing did Judge Wood, counsel, or the Probation Officer reference, quote, or paraphrase the residual clause or conduct any inquiry pertinent to the residual clause. (Doc. 49.) There was no discussion whatsoever as to whether Crews' convictions "otherwise involve conduct that presents a serious potential risk of physical injury to another." (Id.) The phrase "physical injury" was never uttered during the sentencing hearing. (Id.) In contrast, the word "burglary" was spoken thirty-one (31) times. (Id.)

Crews correctly points out that the exact phrases "enumerated crimes clause" or "enumerated clause" were never spoken in his sentencing hearing.[10] (Doc. 111, pp. 2, 5.)

---

[9] Crews contends that Judge Wood "clearly defined Petitioner's State of Georgia burglaries as "NON-GENERIC." (Doc. 111, p. 3 (citing Doc. 49, p. 23); see also id. ("Once again, at sentencing, the sentencing Court addressed Petitioner's prior State of Georgia "burglaries" as 'NON-GENERIC' and not 'GENERIC.'"). Crews misstates, or at least misunderstands, the record. Judge Wood referred to Georgia's burglary statute, not Crews' convictions, as "non-generic." (Doc. 49, p. 23 ("In looking at the Shepard documents, walk me through which ones qualify under **Georgia's non-generic burglary statute** as predicate offenses for armed career criminal purposes.") (emphasis supplied).) This is a critical distinction that Crews seems to miss. As laid out above, a burglary statute can be non-generic, but, if the statute is divisible, a court may still use the modified categorical approach to determine whether the defendant's conviction under the statute is generic. Judge Wood did just that in this case. It does appear that Probation Officer Riggs mistakenly referred to Crews' convictions as "non-generic burglaries" during the sentencing hearing. (Id.) However, he only did so in an incomplete sentence, and Judge Wood interjected to make the record clear. (Id.) Further, it is clear that Judge Wood did not rely upon this misstatement. Moreover, it plainly appears from the PSI, the Addendum, and the remainder of the sentencing transcript that the Probation Officer and the Court determined that Crews' convictions were for generic burglary under Georgia's non-generic burglary statute. Again, in the Addendum to the PSI, with which Judge Wood concurred and adopted, the Probation Officer found that Crews' convictions "**meet the elements of generic burglary**." (PSI Addendum, p. 5 (emphasis supplied).)

[10] The phrases "enumerated crimes clause" and "enumerated offense clause" appear to be of relatively recent origin and are used less frequently than the phrases "residual clause" and "elements clause." In

However, this fact is of no practical import. Judge Wood, counsel, and the Probation Officer were clearly discussing "burglary" as specifically enumerated in the ACCA when conversing about "Taylor," "burglary in the generic sense," "the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime," "generic burglary," "non-generic burglary statute," "Shephard documents," and whether Crews was convicted for entering "structures" "without authority" and "with intent to commit a theft." (Doc. 49.) This is akin to a discussion involving "home runs," "Aaron, DiMaggio, Mays, and Ruth," "balls and strikes," "earned run average," "infield and outfield," "the crack of the bat," and "Fenway Park and Wrigley Field." Regardless of whether someone uttered the word "baseball" during this discussion, participants and listeners would understand that the discussion was about baseball, and for someone to argue that the discussion was instead about football would be nonsense. Similarly, even though no one uttered the words "enumerated crimes clause" during Crews' sentencing hearing, a review of the entire record makes clear that the enumerated crimes clause was the topic of discussion, and Crews cannot now credibly argue that the discussion was instead about the residual clause.

That the Court designated Crews an armed career criminal due to the ACCA enumeration of burglary is further confirmed by Crews' post-sentencing proceedings. On appeal, Crews never attacked his sentence as being under the residual clause. Appellant Br., <u>Crews v. United</u>

---

Taylor, the seminal case interpreting the meaning of the word "burglary" as used in the ACCA, the Supreme Court never used the word "enumerated" much less "enumerated crimes clause." Indeed, it does not appear that the Supreme Court has ever used the phrase "enumerated crimes clause" or "enumerated offense clause" in any reported opinion. The earliest that the Court is aware of a federal court using the phrase "enumerated crimes clause" in a written opinion is in October 2011, almost a year after Crews' sentencing hearing. <u>See</u> <u>United States v. Kutz</u>, 439 F. App'x 751, 752 (10th Cir. 2011). The phrase has still not gained prevalence, as the Eleventh Circuit did not use the phrase "enumerated crimes clause" in <u>Howard</u>, even though that case centered on the interpretation of the word "burglary", as specifically enumerated in the ACCA. Thus, it is clear that courts often discuss the crimes enumerated in the ACCA without using the phrase "enumerated crimes clause" or "enumerated crimes", just as Judge Wood did during Crews' sentencing hearing.

States, Case No. 12-11022 (11th Cir. May 30, 2012).  Rather, he argued that designating his generic burglary convictions as "burglary" under the ACCA had no rational basis and violated the Constitution because others convicted of non-generic burglary would not receive the same treatment.  Id. at pp. 17–18 (citing, *inter alia*, Taylor, 495 U.S. at 592; Ranier, 616 F.3d at 1215).  The Eleventh Circuit rejected this and Crews' other arguments and explained what convictions are treated as "generic (i.e., structure) burglaries", as enumerated in the ACCA.  Id. at pp. 3–4 (citing Taylor, 495 U.S. at 599; Ranier, 616 F.3d at 1213).)  Thus, Crews challenged his treatment under the enumerated crimes clause, and the Eleventh Circuit affirmed his sentence using analysis applicable to the enumerated crimes clause.  The Eleventh Circuit never mentioned, referred to, or even paraphrased the residual clause, and it did not conduct any analysis in any way related to the residual clause.

Crews' first Section 2255 motion, filed *pro se*, also makes clear that he understood his ACCA status was due to the Act's enumeration of burglary as a crime of violence.  (Doc. 60.)  In his motion, he challenged whether his conviction contained the required elements for "generic burglary", and he discussed the rule for determining when a defendant's prior conviction counts as one of ACCA's **enumerated predicate offenses (e.g., burglary)**."  (Id. at p. 3 (emphasis supplied).)  In his objections to Judge Graham's Report and Recommendation, Crews argued that his convictions for burglarizing commercial structures under Georgia's statute no longer qualified as "burglaries" under the ACCA due to the decision in Howard.  Crews never argued that his convictions did not "otherwise involve conduct that a serious potential risk of physical injury to another."  In his many pleadings relating to his first Section 2255 motion, Crews never mentioned or referred to the residual clause, because he knew that he had not been sentenced under the residual clause.

This Court's analysis of Crews' first Section 2255 motion, laid out above in detail, further demonstrates that the Court assessed his sentence under the ACCA's enumeration of burglary. (Doc. 84.) The Court did not frame the issue as whether his convictions "otherwise involve conduct that present a serious potential risk of physical injury to another." Rather, the Court assessed "whether each of his state law convictions for burglary constitute[s] a burglary [under the ACCA]." (Id. at p. 4.) The Court answered this question in the affirmative with reference to enumerated crimes precedent: Descamps, Taylor, Shephard, and Howard. (Id. at pp. 5–16.) Indeed, prior to its decision, the Court ordered additional briefing based on the decision in Howard and its effect on how courts are to ascertain whether a conviction meets the definition of "burglary" under the ACCA. (Doc. 71.)

As noted, Crews never made any reference to the residual clause in any of his numerous pleadings in this case until after the Supreme Court's decision in Johnson. Attempting to seize the opportunity that Johnson can afford, Crews changed his tune from arguing that the Court improperly sentenced under the ACCA's enumeration of burglary to arguing that the Court sentenced him under the residual clause. (Docs. 96, 106.) However, the fact that Johnson struck down the residual clause does not change the fact that Crews was not sentenced under the residual clause. Crews perhaps senses this truth, as he does not seek to add fuel to his residual clause fire in his Motion to Amend but instead seeks to add claims which are only relevant to his already-extinguished enumerated crimes arguments. (Doc. 112.)

Put simply, the record in this case establishes that Judge Wood sentenced Crews to 180 months' imprisonment because she determined that at least three of his prior convictions for burglary constituted "burglary", as enumerated in the ACCA. The sentencing court did not address, much less decide, whether any of Crews' convictions "otherwise involve conduct that

present a serious potential risk of physical injury to another." Therefore, the residual clause played no part in Crews' sentencing, and <u>Johnson</u> cannot play any part in his Section 2255 Motion. As such, Crews' Motion does not properly rely on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court," and this Court has no jurisdiction to hear this case. 28 U.S.C. § 2255(h).

For all of these reasons, the Court should **DISMISS** Crews' Section 2255 Motion.

## III.    Whether Crews is Entitled to Relief on the Merits

Even if Crews could pass through the gate of Section 2255(h), he cannot clear the other hurdles necessary to obtain resentencing relief. To prove a <u>Johnson</u> claim, Crews must show:

> (1) [] the sentencing court relied solely on the residual clause, as opposed to also or solely relying on either the enumerated offenses clause or elements clause (neither of which were called into question by <u>Johnson</u>) to qualify a prior conviction as a violent felony, and (2) [] there were not at least three other prior convictions that could have qualified under either of those two clauses as a violent felony, or as a serious drug offense.

<u>Beeman</u>, 871 F.3d at 1221–22. Crews cannot meet either of these two requirements.

As laid out above, the record establishes that the Court relied upon the ACCA's enumeration of "burglary" as a crime of violence when sentencing Crews. The Supreme Court in <u>Johnson</u> emphasized its "decision does not call into question application of the Act to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." ___ U.S. at ___, 135 S. Ct. at 2563. Because the record establishes that the residual clause played no part in Crews' sentencing hearing or in any of his post-sentencing proceedings, <u>Johnson</u> affords him no relief.

Moreover, even if the record were unclear as to whether Judge Wood relied on the ACCA's residual clause or the enumerated offense of burglary, the Court must deny Crews' Motion. During at least one point in his recent pleadings, Crews appears to contend that the

record does not reveal which provision of the ACCA the Court relied upon at sentencing. (See Doc. 111, p. 5 ("Since the record does not reveal which provision guided the court's decision, as to 'residual clause', or 'enumerated clause'. . . .).) However, uncertainty is not enough to obtain Johnson relief. Rather, Crews possesses the burden to establish that Judge Wood "more likely than not" relied on the residual clause, as opposed to the enumerated crimes provision in classifying him as an armed career criminal and sentencing him accordingly. Beeman, 871 F.3d at 1221–22. Thus, even if the record were silent on that issue, "where the evidence does not clearly explain what happened, the party with the burden loses." Id. at 1225; see also Oxner, 2017 WL 6603584, at *3 (affirming denial of Johnson relief to Section 2255 movant who conceded that record was silent as to whether he was sentenced under residual clause or enumerated crimes clause). Crews has not carried his burden to prove that Judge Wood relied on the residual clause—solely or otherwise—when sentencing him under the ACCA.

Moreover, even if Crews had proven that Judge Wood solely relied upon the residual clause, he has failed to prove that he does not have at least three convictions for "violent felonies" under the other clauses of the ACCA. Prior to his sentencing, Crews had obtained at least three prior convictions that qualify as "burglaries" under the ACCA's enumerated crimes clause. As explained above, not only during Crews' sentencing hearing, but also during Crews' first Section 2255 proceedings, this Court held that Crews' burglary convictions meet the ACCA's enumeration of "burglary", and thus, qualified as violent felonies. (Doc. 84.) Moreover, on Crews' direct appeal, the Eleventh Circuit affirmed Crews' ACCA designation under an enumerated crimes clause analysis. (Doc. 56.) These findings have only been fortified by recent precedent, including Mathis and Gundy.

For these reasons, even if the Court finds that it has jurisdiction to hear Crews' Motion under Section 2255(h), the Court should **DENY** his Motion on the merits.

## IV. Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Crews leave to appeal *in forma pauperis* and a Certificate of Appealability. Though Crews has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. Pursuant to Rule 11 of the Rules Governing Section 2255 Cases, "the district court <u>must</u> issue or deny a certificate of appealability when it issues a final order adverse to the applicant." (Emphasis supplied); <u>see also</u> Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. <u>Busch v. Cty. of Volusia</u>, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989); <u>Carroll v. Gross</u>, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." <u>Napier v. Preslicka</u>, 314 F.3d 528, 531 (11th Cir. 2002); <u>see also</u> <u>Brown v. United States</u>, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued. A certificate of

appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right. The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits." Miller-El v. Cockrell, 537 U.S. 322, 336 (2003). In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Id. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000). "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims." Miller-El, 537 U.S. at 336.

Based on the above analysis of Crews' pleading and the Government's Response and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appeal; therefore, the Court should **DENY** the issuance of a Certificate of Appealability. If the Court adopts this recommendation and denies Crews a Certificate of Appealability, Crews is advised that he "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22." Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts. Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith. Thus, the Court should likewise **DENY** Crews *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** this Court **DISMISS** Crews' Motion to Vacate, Set Aside, or Correct his Sentence for lack of jurisdiction under 28 U.S.C. § 2255(h). (Doc. 106.) Alternatively, to the extent that the Court reaches the merits of Crews' arguments, it should **DENY** his Motion on the merits. Further, I **RECOMMEND** that the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Crews a Certificate of Appealability and *in forma pauperis* status on appeal. Additionally, the Court **DENIES** Crews' Motion to Amend. (Doc. 112.)

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Crews and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of February, 2018.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA